# JAMES F. RONEY, Respondent, v. S. S. BUCKLAND, Appellant.

POWER OF PARTNER TO BORROW MONEY. A general partner in a mercantile business may borrow money for the benefit of the firm, and pledge its credit therefor, unless restrained by the articles of copartnership of which the lender has notice, and may resort to any of the usual means employed for that purpose.

LOAN OF SECURITIES TO PARTNERSHIP. A partnership will be holden for the value of U. S. Bonds loaned to it for the purpose of raising money thereon, the same as if their amount in money had been advanced.

LIABILITY OF FIRM FOR BONDS IN HANDS OF PARTNER. A general partner in a mercantile business, having obtained from a third person certain U. S. Bonds payable to bearer for the benefit of the firm, while on his way to pledge or otherwise raise money upon them for the purchase of goods for the firm, met his death by disaster and the bonds were lost: *Held*, that the transaction constituted a loan to the partnership and that the firm was responsible for the value of the bonds.

CONSTRUCTION OF STATUTES. In the interpretation of any phrase, section or sentence of a statute, the first thing to be ascertained is the ultimate and general purpose of the Legislature in the enactment of the law; and when that is known or ascertained, every sentence and section of the entire Act should be interpreted with reference to such general object and with a view to giving it full and complete effect, extending it to all its logical and legitimate results.

THE SAME. In the construction of a statute, the whole Act being taken together and the general object apparent, any fugitive expression or any sentence which it is impossible so to interpret as to make it accord with and further such general object must be ignored entirely.

SECTION 340 OF PRACTICE ACT. The object which the Legislature had in view in passing Section 340 of the Practice Act, was to make even the parties to actions competent witnesses in all cases, except where an undue advantage might be gained thereby. By the phrase "adverse party" was meant the actual party to the transaction: he who could himself testify as to it.

PARTY AS WITNESS AGAINST SURVIVING PARTNER. When a surviving partner is sued for a loan for the use of the firm made to the deceased partner, and of the particulars of which the deceased partner only was cognizant, the plaintiff is not a competent witness in his own behalf.

APPEAL from the District Court of the First Judicial District, Storey County.

The facts are fully stated in the opinion; but for the better understanding of some of the points decided, certain portions of the charge of the Court below to the jury, which were excepted to by the appellant, are given as follows:

" The authority delegated by one partner to another is to act in their particular trade or line of business for the benefit of the firm ; and in such transactions strangers have a right to act on the credit of the partnership fund.    It is not necessary that the money lent or credit given should appear to have been actually appropriated or used for the benefit of the partnership ; it is sufficient if the money loaned and advanced was designed for that object."

And again :

" The question for your determination is simply : Did the plaintiff loan the firm of Buckland & Bethel the money and bonds at the time as stated in the complaint, and have the same ever been paid ?    If you conclude as to this question in the affirmative, your verdict should be for plaintiff; otherwise, you must find for the defendant.

If you believe from the testimony that the plaintiff gave to Bethel the notes and bonds, which plaintiff denies in his testimony, and that Bethel received them with an understanding or agreement that he would take them to San Francisco for the purpose of converting them, or a portion of them, into gold, to use such gold for the benefit of the business of Buckland & Bethel, you must find for the plaintiff."

The instructions asked by appellant and refused were as follows :

"*Third*—If the jury find from the evidence that the notes and bonds in question were delivered to Bethel, not as a loan but for the purpose of enabling Bethel to raise money or gold on them as collateral security in San Francisco, and with the privilege of using such money or gold for the benefit of the firm of Buckland & Bethel, and that said notes and bonds were never applied to said purpose, but were lost before reaching San Francisco, then they must find for defendant.

*Fourth*—If the jury believe from the evidence that plaintiff gave Bethel, the deceased, the greenbacks and bonds mentioned in the complaint on the credit of the firm of Buckland & Bethel, they must still find for the defendant in the case of the claim for the bonds in the sum of fifteen hundred dollars, unless the proof shows that Buckland knew of or approved the transaction, or unless it was a part of the firm business to deal in such securities.".

*Williams and Bixler*, for Appellant, contended :

### I.

1. That the business of carrying the kind of securities bailed by Roney to Bethel was not within the scope of the partnership business of Bethel and Buckland, and therefore Buckland did not become a bailee.

2. That by the terms of the contract between Roney and Bethel, the latter became the sole agent of the former to carry the securities bailed to San Francisco, there to use them for the benefit of the partnership ; and hence Buckland was not to become liable until they were used in the agreed manner. Not having been so used, his liability never attached.

3. That the articles bailed having been stolen without any fault of the bailee, the loss must fall on the bailor.

4. That the verdict (following the complaint) was for the plaintiff in debt, while the evidence showed only a bailment ; hence, there was no evidence whatever to sustain the verdict, and it should have been set aside, both as against law and evidence.

### II.

1. That the Court erred in refusing the third instruction offered by defendant, and giving the charge on the same subject. (Edwards on Bailments, 34, and 94–95 ; *Morss* v. *Stone*, 5 Barb. S. C. 516 ; Parsons on Contracts, 612–13, and note " k.")

2. That the Court erred in refusing the fourth instruction offered by defendant, and in the charge on the same question. (Story on Part., Secs. 126–7–8 ; *Butler* v. *Stocking*, 4 Selden, N. Y. 410.)

### III.

That the plaintiff Roney was not a competent witness ; Bethel, the other party to the transaction, having died previous to the time at which he was offered as a witness.

1. Because the representative of a deceased person, referred to in the statute concerning witnesses, means any one who stands in the place of another, or represents him in name or interest, whether by appointment or operation of law. (*Smith* v. *Smith*, 1 Allen,

Mass. 231; *Davis* v. *Davis*, 26 Cal. 23; 39 Barb. S. C. 520.) Buckland, by operation of law, "represents" the interest of · the deceased Bethel as to one-half the demand sued for.  (*Grant* v. *Sharter*, 1 Wend. 148; *Clark's Ex.* v. *Carrington*, 7 Cranch. 308; 3 Phil. on Evidence, 425, note 2; 1 Parsons on Contracts, 31–32, latter part of the Secs. 2 and 3; *Hall et al.* v. *Cecil & Rex*, 6 Bing. Com. Law, 181; *Evans* v. *Teathard*, 2 Bing. 133; Statutes of 1861, 219, Sec. 200.)

2. Because the phrase " adverse party," as used in the statute, must mean " the other," and can only refer to " the other party to the suit or in interest," or " the other party to the transac tion."   To claim that the Legislature meant " the other party to the suit," or " the other party in interest," is to convict that department of the Government of a ridiculous absurdity.   A dead man can neither have an interest in a suit or be a party thereto. The language " when the adverse party is dead," must have been inserted for the purpose of making exceptions not embraced in the subsequent language, " or where the opposite party shall be the administrator, executor, or legal representative of a deceased person."   The " adverse party " named by the statute must be dead; if living, he is not the person intended; he is therefore *the other party to the transaction.*

Giving the Act this construction, it follows that no case can arise where one party to a suit may testify without being liable to be confronted with the person with whom he dealt.   The New York cases cited from 3 Bosworth and 17 How. Prac. R. were based upon a statute. employing very different language from the Nevada Act, and for that reason, if no other, they are not authority in this case.

In New York " a party to an action or proceeding may be examined as a witness in his own behalf the same as any other witness ; but such examination shall not be had, nor shall any other person for whose immediate benefit the same is prosecuted or defended be so examined, unless the adverse party or person in interest is living ; nor when the opposite party shall be the assignee, administrator, executor, or legal representative of a deceased person.   It will be noticed that the language is, " unless the adverse. party or person in interest is living."

In the cases cited, the Courts hold that two classes are embraced in the clause of the Act quoted " the adverse party to the suit," and " the person in interest in the suit," and say in substance that the surviving partner is the adverse party meant, and that the other party in interest does not mean the " representative " of a deceased partner, but refers to the person for whose immediate benefit an action is prosecuted or defended.

They may be correct in construing " adverse party " to mean the " other party to the suit ;" such a construction is not absurd or far-fetched, because the surviving partner can be " the other party to the suit ;" but we reiterate that the *other party to a suit* cannot be dead, which must be the case, as we have shown, if the Nevada Act uses the expression " adverse party " in the sense in which it is used in the New York Act, as construed by the New York Courts.

*Aldrich and De Long*, for Respondent.

## I.

The first point made by appellant is that the transaction between the plaintiff and Bethel was a bailment, and if any liability attached, it attached to Bethel in his individual capacity. Whether it can be called a bailment or not, it was intended as a loan by the parties to it; a contract by which the firm of Buckland & Bethel obtained the use of the bonds for the purpose of raising coin to be used in the business of the firm. If a bailment at all, it would come in the classification of the books of the different species of bailments, under the head of the contract of hiring. (Edwards on Bailments, 12, 37.)

But it can make no difference in the legal results, nor as to the liability of the defendant, whether the transaction with regard to the bonds be regarded as a bailment or a loan.

If a bailment, then the complaint and proofs showed the delivery of the notes and bonds, their value, the demand for them, and the refusal to return them. The bailor made out his right to recover, upon proof of the delivery of the article to the bailee, and of a demand for its return and a refusal to return it, or a failure to excuse the non-return by proof of its loss. (Edwards on Bail-

ments, 304, 305, 323 ; 1 Parsons on Cont. 606.)   And there was
no proof of the loss of the bonds and no attempt to excuse their
non-delivery; all that appeared in proof was that Bethel lost his
life at the explosion of the steamer Yosemite ; whether his effects
were recovered, whether these bonds were in his trunk or on his
person, or elsewhere at the time, did not appear.   (Edwards on
Bailments, 304, 305, 323 ; *Horton* v. *Ruhling et als.*, 3 Nev. 498.)

## II.

The next point of the appellant is that the Court erred in admit-
ting the testimony of Roney, he being excluded under the statute
which allows parties to testify.   He assumes that the transaction
upon which the action is founded was the individual transaction of
Bethel.   If such were the case, the action in its present shape
must fail in any event, and the exclusion of Roney or his admis-
sions would be a matter of no consequence.   But Roney does not
come within the rule of exclusion.   Buckland is the adverse party.
He, as the partner of Bethel, is responsible not only jointly with
Bethel, but separately and individually for the whole debt.   Roney
may, and might if Bethel had been alive, have collected the whole
amount out of Buckland's private estate.   He was primarily and
originally liable for the payment of the whole sum.   In defending
this action, he is not acting as the legal representative of Bethel,
but on his own account ; the judgment is against him individually,
and if affirmed by the Court, will be collected from him without
reference to the condition of the partnership affairs.

The reason why the plaintiff is excluded where the adverse party
is the executor, administrator or legal representative of a deceased
person, is that such adverse party could not with any justice be
presumed to know anything, and generally does not know anything,
about the transaction of such deceased person.   Such a presump-
tion would not be legal, nor would it be founded in justice.   Not
so with a partner.   The law charges him with notice of all the
dealings and transactions of his copartners within the scope of the
partnership business.   This is a presumption not only legal, but
founded in justice.

In *Davis* v. *Davis*, (26 Cal. 23) cited by appellant, it is decided

that the purchase of real estate is within the meaning of the word "representative" used in the California statute, so as to exclude the testimony of the defendant in an action of ejectment for the property, as to declarations made by the grantor tending to defeat the plaintiff's title.

So in *Lee* v. *Dill*, (39 Barb. 516) the Court defines the word representative substantially as defined by the California Court.

In *Grant* v. *Sharter*, (1 Wend. 148) it is decided that in an action against the executor of a deceased partner, the surviving partner may be a witness to prove the existence of the partnership. We cannot perceive how this applies to the present case.

In Parsons on Contracts (31, 32) the doctrine is stated that " if one or more of several joint obligees die the right of action is solely in the survivors, and *if all die* the action must be brought by the *representatives* of the last survivor." The word *representative* here seems to be limited in its application to the executor or administrator, and the authority seems to conflict with the doctrine which appellant seeks to maintain.

The Statute of 1861 (219, Section 200) is declaratory of the doctrine of the common law on this subject, giving the surviving partner the right to settle up the affairs of the partnership in preference to the administrator or executor of the deceased partner, and does not put him in the position of a representative of the deceased.

In *Bigelow* v. *Mallory*, (17 How. Prac. R. 427) it is held that a surviving partner, within the meaning of the statute of the State of New York, in a suit against him as such, is " the adverse party or person in interest," and that the plaintiff may be examined on his own behalf in such a case.

In *Bissell* v. *Hamlien* (3 Bosworth, 383) it is decided that in an action against the survivor of a firm, as such, which, at the time the transaction took place, consisted of three persons, and two of such persons are dead, the plaintiff may be examined in his own behalf.

### III.

The next point made by appellant is, that the transactions proven are not within the scope of the partnership business, and therefore

Bethel only was bound by them. It was shown that this was a commercial partnership. It is therefore governed by the general rules which are so well established that it is unnecessary to do more than make a reference to one or two standard text-books on the subject of partnership. (1 Parsons' Contracts, 155, and note *v*, same page; 5 Cranch, 300; 3 Kent's Com. 42.)

By the Court, LEWIS, J.

The appellant takes this appeal from a judgment rendered against him for fifteen hundred dollars, upon an indebtedness of a mercantile firm of which the defendant is the surviving partner.

That the questions of law discussed upon this appeal may be fully understood, we will state generally the facts out of which the action arose, and about which there seems to be no controversy in this Court. It appears that in the year 1865 the appellant Buckland and one Henry Bethel were copartners in the mercantile business in the county of Lyon. That in the month of October of that year Bethel obtained from the respondent three, seven-thirty bonds of the United States, which were made payable to bearer, and in the aggregate worth the sum of fifteen hundred dollars. The plaintiff testifying on his own behalf stated that these notes were delivered to Bethel to be used by the firm, but to be returned to him upon his request; that Bethel, who was on his way to San Francisco to purchase a stock of goods at the time the bonds were delivered to him, proposed pledging, or in some other way raising money upon them, and to use the money so obtained in the purchase of goods for the firm. The plaintiff also testified, and the jury by their verdict found, that the bonds were delivered for the benefit of the firm.

Bethel lost his life by the wreck of the steamer upon which he had taken passage, before reaching San Francisco, and as nothing was afterwards heard of the bonds, it is supposed they were lost in the wreck. The verdict being for the plaintiff the defendant appeals, and asks a reversal of the judgment for the following reasons:

1st. Because the transaction with Bethel, as shown by the evidence, was a mere bailment, not a loan; that it was therefore

simply a personal matter between Bethel and the plaintiff, and not a partnership transaction, the respective partners not having the power to bind the firm in such transactions; and 2d. It is claimed that the plaintiff was not a competent witness to prove the transaction between himself and Bethel, the latter not being alive at the time of the trial. These two propositions constitute the foundation of the argument on behalf of the appellant, and present the only questions necessary to be discussed by this Court.

It must be conceded in the outset that the power to bind the firm in transactions of the character in question existed, if at all, as incidental to or included in the power to borrow money for the benefit of the firm; for there is nothing in the articles of copartnership beyond that which could perhaps authorize it. If it be demonstrated that Bethel possessed the power to bind the firm of which he was a member by such a transaction, that will dispose of the first proposition of counsel, for the jury have found that he did in fact act on behalf of the copartnership, and upon the record as it comes before us that fact cannot be questioned; hence, Did he possess the power to act for the firm in the transaction? is the question now necessary to be considered.

This was a general partnership in mercantile business, and consequently the powers and liabilities of the respective partners must be determined by the rules generally governing such copartnerships.

Mr. Collyer thus epitomizes the powers of each member of a commercial copartnership:

" He may buy, sell, or pledge partnership effects; he may borrow, receive, or pay money; he may draw, indorse, or accept bills, notes, checks, and other negotiable instruments; and he may procure insurance for the firm, and do any other acts, and enter into any contracts in reference to the business of the firm, which are incident or appropriate to such business, according to the ordinary course or usage thereof." (Collyer on Partnership, 348.)

Among all the powers with which he is invested none is more universally recognized, or acknowledged, than that of borrowing money for the benefit of the firm, and binding it by contract for its payment—a power which, whilst it may perhaps be the most

dangerous, is moreover the most essential with which a partner in a mercantile firm can be clothed, for it greatly enhances the credit of a firm in mercantile business, and a vast facility is thereby given to all its dealings, insomuch that the partners may reside in different parts of the country, or even of the world.

The power of each member of such a partnership to bind his associates for the payment of money borrowed by him for the benefit of the concern, is limited only by actual notice being brought to the creditor that the articles of copartnership deprived each member of the general power of borrowing money for the firm.

" It may be laid down as a general rule," says Mr. Collyer, " that partners are bound universally by what is done by each other in the course of the partnership business."

" One partner may pledge the credit of the other to any amount," is the strong language employed by Lord Kenyon. (Collyer on Partnership, 349.)  If each partner may thus borrow money for the benefit of the firm, and pledge the credit of his associates for that purpose, can it be claimed that he may not resort to any of the usual means employed for that purpose ?  It is well settled that a partner may obtain the indorsement of a stranger to the firm note, and if such endorser be compelled to pay such note there is certainly no doubt but he might recover from the firm.

Had the plaintiff in this case given his own note to Bethel for the purpose of aiding him in borrowing money for the firm, or indorsed the firm paper and been compelled to pay it, there can hardly be a doubt of Bethel's right to obtain such security, or of the plaintiff's right to recover from the firm should he be compelled to pay it.  Such transactions are of daily occurrence among mercantile men, and are perfectly legitimate.

If in such case Bethel could bind the firm, why might he not also obtain other security for the same purpose ?  The character of the security should certainly not affect the rights of the creditor, especially if it appear that it was a *bona fide* transaction for the purpose of raising money for the benefit of the partnership. The Government securities obtained from the plaintiff have a defi-

nite market value, usually being at par and easily converted into money. Indeed, they may be readily used as money although not a legal tender. If to obtain the plaintiff's own note or an accommodation indorsement from him would have been a proper transaction on the part of the plaintiff and within his legitimate authority as a member of a mercantile firm, we can see no possible reason why it was not fully as legitimate and as completely within his power to obtain other securities to aid the firm in borrowing money. The borrowing of money for the benefit of the partnership was the ultimate object of the transaction with the plaintiff.

That was legitimately within the power of the deceased partner, and the only objection which seems to be made now is to the means which Bethel took to accomplish that object. The object was legitimate. The means adopted were not very unusual; hence we see no reason why the firm should not be holden for the value of the securities obtained from the plaintiff precisely the same as if he had advanced the amount in money to the concern. As this question will necessarily be involved in another trial of this cause we have deemed it expedient to dispose of it at this time, although we reverse the judgment upon the other point argued by counsel for appellant.

Whether the plaintiff could properly be examined as a witness on his own behalf as to the transaction between himself and Bethel is a question depending entirely upon the construction to be placed upon Section 340 of the Practice Act as amended in the year 1864, (Laws of 1864, page 77) which declares that "All persons without exception including parties to, or those interested in, the suit, except where the adverse party is dead or where the opposite party shall be the administrator, executor, or legal representative of a deceased person, may be witnesses in any action or proceeding, except as otherwise provided in this chapter of this Act." The old rule, as generally stated, was that no person who was interested in the result of a suit was a competent witness.

But this section of the Practice Act abrogates the old rule and renders even the parties to an action competent in all cases, except when the "adverse party" is dead or the opposite party is the legal representative of a deceased person.

To render the plaintiff incompetent as a witness on his own behalf in this action therefore, it must appear that the " adverse party " is dead, or that the defendant " is the legal representative of a deceased person," otherwise he would be fully competent under the Practice Act. But who is to be understood as the adverse party is the question upon which counsel differ in opinion—attorneys for appellant arguing that by the words " adverse party " is meant the party actually engaged in the transaction out of which the action arose, whilst, on the other hand, it is claimed that the other party thus referred to is the person legally bound or principally interested in such transaction, whether he have any personal knowledge of the matter himself or not. Assuming such to be the construction to be placed upon these words, counsel for respondent argues that as Bethel represented the firm of Buckland & Bethel in obtaining the securities in question, the defendant Buckland was legally a party to the transaction, and he being the surviving partner of that firm and the proper defendant in this suit, must be deemed the " adverse party." The crude condition of the section under consideration, and the evident failure on the part of the Legislature to give full expression to the object which it had in view, involves this question in grave doubts, and probably makes a perfectly satisfactory solution of it altogether impossible.

But notwithstanding its crudity, the chief or ultimate object which the Legislature had in view is quite apparent, and in the conclusion at which we have arrived, we have as far as possible endeavored to carry out what we understand to have been that object. The imperfection of human language renders the complete and exact expression of thought in all cases utterly impossible. To give expression at all times to exactly what is intended, to employ words which are neither too comprehensive nor too limited, is a power which no proficiency in philology can bestow upon man. The positive definition of words is often modified by the context, and by the peculiar ideas or notions which each person entertains of the subject or thing spoken of; a phrase or sentence taken by itself, therefore, will not always convey the precise idea intended to be expressed. Added to this imperfection and inappropriate use of language which so often renders the intention of the Legislature

Roney *v.* Buckland.

uncertain, is the further difficulty of producing an Act entirely har-
monious in all its parts and details.   It is not unfrequently the
case that the general object or purpose is perfectly clear, whilst the
details and means prescribed for carrying such purpose into execu-
tion are crude and contradictory.   Hence, in the interpretation of
any phrase, sentence or section of a law, the first thing to be ascer-
tained is the ultimate and general purpose of the Legislature in the
enactment of the law.  · When that is known or ascertained, then
every sentence and section of the entire law should be interpreted
with reference to such general object, and with a view to giving it
full and complete effect, extending it to all its logical and legitimate
results.   That object must, of course, be ascertained from the Act
itself.   But the whole Act must be taken together, and when the
general object is apparent, any fugitive expression, or any sentence
which it is impossible so to interpret as to make it accord with, and
further such general object, must be ignored entirely.

· Now, the ultimate and general object which the Legislature had
in view in the enactment of the section under consideration, was to
make even the parties to actions competent witnesses on their own
behalf, in all cases except where an undue advantage might be
gained thereby. · That one person to a transaction should not be
allowed to testify in his own behalf as to the character of such
transaction, when the other party or parties to it cannot be pro-
duced to testify, is dictated by the most obvious considerations of
prudence and the clearest principles of justice.   The common law,
fully recognizing the weakness of human nature and the natural in-
clination of man to color everything to suit his own interest or
desire, made all persons having any direct interest in the result of
an action incompetent as witnesses.   Our statute, however, which
bears the marks of the progressive and innovating genius of the
age, sweeps away all the barriers which the cautious wisdom of the
common law threw around litigants; and with few exceptions ad-
mits all persons into the witness box regardless of the interest which
they may have in the action.   But there are circumstances, it
seems, under which the Legislature considered itself justified in
denying this right; that is when the " adverse party is dead," or
where the opposite party is the legal representative of a deceased

person.    But why should the fact that one of the parties sues or is sued in the character of executor or administrator deprive the other party to the suit of the right to testify ?    The answer is obvious : because the Legislature, doubtless, deemed it injudicious and unjust to allow a person to testify on his own behalf about a transaction when the other person actually engaged in it is unable to appear by reason of death.    Although actions might often arise upon transactions had with the executor or administrator personally, and no exception is made in such cases, yet that the motive of the Legislature was as we have stated it can hardly admit of a doubt. What other possible object could there have been for the exception to the general right given to all persons in the section ?    When both parties to a transaction or contract can be brought before the Court and examined, it cannot be said to be unfair for either.    The right is equal and natural, and if there be any conflict in their testimony the Judge or jury is to decide between them.    As a general rule, no undue advantage could be taken in such case, but the danger of admitting one party to a transaction to testify when the testimony of the other cannot be obtained, is too apparent to need comment.

If the general object of the Legislature was to allow all persons to testify when both sides of the transaction could be presented to the Court and not otherwise, (and if such were not its object, we can see no reason why any exception whatever should be made to the general right granted in the first part of the section) we discover at once that by the " adverse party" is meant the actual party to the transaction, he who can himself testify as to such transaction.    No other construction will give effect to what we understand to have been the purpose of the Legislature.

Buckland, it is true, was legally a party to the transaction, but he knew nothing about it, Bethel alone being engaged in it.    By the spirit of the statute, therefore, the plaintiff is as incompetent a witness on his own behalf as if Buckland were not even legally a party to the business.    He cannot be confronted by the other party actually engaged in the transaction upon which this suit is brought.

This rule will undoubtedly operate harshly in many cases, as all general rules do.    Such may be the effect in this case, for the plaintiff's truth and correctness of recollection is impressed upon

every word of his testimony, and without it he may lose the case; but we cannot construe the law so as to obviate all hardship in every case.

The plaintiff was not, therefore, in our opinion, a competent witness on his own behalf, and the Court erred in admitting his evidence.

Judgment reversed and a new trial ordered.