[No. 999.]

## Ex parte L. SIEBENHAUER.

CONSTRUCTION OF STATUTE—INTENTION OF LEGISLATURE.—In order to reach the intention of the legislature, courts may modify, restrict, or extend the meaning of the words used in a statute so as to meet the evident policy of the act.

IDEM—ABSURD RESULTS SHOULD BE AVOIDED.—The meaning of the words may be sought by examining the context; by considering the reason or spirit of the law or the causes which induced the legislature to enact it. The subject-matter and policy of the law may be invoked, and the statute should be so construed as to avoid absurd results.

IDEM—LICENSE TAX—MEANING OF WORD "SOLICITOR."—The word "solicitor" as used in the act to reincorporate Virginia City, stat. 1879, 79, applies to individuals who are engaged or employed specially for the purpose of soliciting, importuning, or entreating for the purchase of goods as an independent occupation or business for a profit or as a means of livelihood. (Hawley, J.)

IDEM—CITY LICENSE AND COUNTY LICENSE MAY BE REQUIRED FOR THE SAME BUSINESS.—The city of Virginia, under its charter, may require a license for carrying on any trade, business or profession, although an act of the legislature also requires a license to be taken out for carrying on the same trade, business, or profession within the county, and can enforce a penalty in case of a refusal to take out such license.

ORDINANCE OF VIRGINIA CITY—LICENSE TAX VALID.—*Held*, that the ordinance of Virginia City, requiring a license tax, does not discriminate against, or in favor of, any class of citizens.

TRAVELING MERCHANT REQUIRED TO PAY A LICENSE AS A MERCHANT.—Petitioner kept a stock of goods in San Francisco, California, and comes to Virginia City, Nevada, for the purpose of soliciting orders for goods: *Held*, that the city of Virginia was authorized to impose and collect a license tax from him as a merchant. (Beatty, C. J., and Leonard, J.)

HABEAS CORPUS. The facts appear in the opinion.

*Lewis & Deal*, for Petitioner.

I. The charter of a municipal corporation must be strictly construed. (Sedgwick on Stat. Const. 281–83.) If there be any doubt the doubt must be resolved in favor of

the petitioner. (1 Dillon on Munic. Corp. sec. 55 and n.) The mode and manner of taxation must be strictly followed. (1 Dillon on Munic. Corp. sec. 620.)

II. Persons in the petitioner's business are never known as, or called, solicitors. The court can not conclude that such persons were intended by the legislature.

III. The state or county under a state law collects the same kind of tax, and imposes a penalty for refusal. The city can not do the same thing. (23 Conn. 128.)

IV. The ordinance discriminates against foreign solicitors or goods brought from without the city of Virginia, and is therefore void. *Ward* v. *Maryland*, 12 Wall. 418, and authorities cited in *Ex parte Robinson*, 12 Nev. 271; 49 Mo. 559; Sedgwick on Construction, 360, note.)

*John Knox Brown and Wm. Woodburn*, for Respondent.

I. The word " solicitor " in the ordinance is not used in any sense contrary to the general meaning.

II. A municipal corporation may tax the business of such persons as may have already obtained license from the state to prosecute their respective callings. (*Wright* v. *Mayor of Atlanta*, 54 Ga. 645; *Simpson* v. *Savage*, 1 Mo. 255; 1 Dillon on Munic. Corp. sec. 53.)

III. The ordinance applies solely to persons doing business, regardless of their places of residence. By coming within the town and acting there, a person becomes liable as an inhabitant and a member of the corporation. (*Commissioners of Wilmington* v. *Roby*, 8 Ired. 250; *Commissioners of Edenton* v. *Capeheart*, 71 N. C. 156.)

By the Court, HAWLEY, J.:

1. Petitioner is a citizen of the state of California. He came from San Francisco for the purpose of soliciting orders from the merchants of Virginia City, and did obtain orders for merchandise, which orders were to be filled in San Francisco by petitioner and shipped to said merchants in Virginia City. He testifies that he and others, who are engaged in this occupation or business, are known among merchants as commercial or traveling agents, and are not

called solicitors.   He was arrested upon a complaint charging him with soliciting such orders without taking out and paying a license therefor as provided in section 2 of an ordinance of Virginia City, which reads as follows:

"Every person or firm engaged in the business of soliciting the purchase of goods, wares or merchandise within the limits of the city of Virginia, to be sent to said city of Virginia from places beyond the limits of said city, or upon orders to be filled elsewhere than in said city, and every person bargaining or selling any goods, wares, or merchandise, by sample or otherwise, in said city, where the same are to be sent to said city from beyond its limits, shall be deemed a solicitor and shall pay quarterly for a license to carry on said business, according to the monthly receipts or sales of such solicitors," as set forth in a schedule.

Section 3 of said ordinance provides that any person, firm or association who shall be engaged in said business without having first taken out a license therefor shall, upon conviction, be punished by a fine or by imprisonment in the city jail, as therein prescribed.

The authority for the passage of said ordinance is derived from the act of the legislature "approved March 6, 1879," which gives. to the board of aldermen power " to fix and collect a license tax on and regulate  *  *  *  solicitors." (Stat. 1879, 79.)

The statute does not attempt to define the word " solicitors."  Lexicographers give it two meanings.   First.   One who solicits, importunes, entreats, or asks with earnestness; one who solicits for another.   Second (law).   An attorney or advocate; a person admitted to practice in courts of chancery or equity.

Under the code and practice in this state, the term solicitor is never applied to attorneys-at-law.   It relates to attorneys practicing in the federal courts in chancery or equity.   We think it is manifest that the word solicitors, as used in the statute, was not intended to apply to attorneys-at-law.

Counsel for petitioner claim that its meaning is too vague, general, and indefinite to enable the court to determine who

was intended. It is undoubtedly true that the first definition, as above given, applies, in its general and broadest sense, to all persons who solicit orders or favors of any kind or character. To so apply it would lead to manifold absurdities. It would, if so construed, authorize the municipality of Virginia City to fix and collect a license tax upon every individual who might, at any time, be called upon to solicit money for political, charitable, religious, and many other similar purposes. But it does not necessarily follow that we are bound to give to the word any meaning that would lead to such absurdities.

Our duty begins and ends with determining the meaning intended by the legislature. If that can be ascertained by any legal means, we are compelled to so construe it as to give effect to the intention of the legislature. This principle is cardinal and universal.

In order to reach the intention of the legislature, courts are not bound to always take the words of a statute either in their literal or ordinary sense, if by so doing it would lead to any absurdity or manifest injustice, but may in such cases modify, restrict or extend the meaning of the words so as to meet the plain, evident policy and purview of the act and bring it within the intention which the legislature had in view at the time it was enacted. (*Gibson* v. *Mason*, 5 Nev. 285; *Reiche* v. *Smythe*, 13 Wal. 164; *Burgett* v. *Burgett*, 1 Ohio, 480; *McIntyre* v. *Ingraham*, 35 Miss. 52; *Camp* v. *Rogers*, 44 Conn. 291; *Castner* v. *Walrod*, 83 Ills. 178; *Fisher* v. *Patterson*, 13 Pa. St. 338; Bishop on Statutory Crimes, section 212.)

The meaning of words used in a statute may be sought by examining the context and by considering the reason or spirit of the law or the causes which induced the legislature to enact it. The entire subject-matter and the policy of the law may also be invoked to aid in its interpretation, and it should always be so construed as to avoid absurd results. (*Roney* v. *Buckland*, 4 Nev. 45; *State ex rel. Keith* v. *D. and V. T. R. R. Co.*, 10 Id. 155; *Silver* v. *Ladd*, 7 Wal. 219; *State* v. *Judge*, 12 La. An. 777; *State* v. *Mayor etc.*, 35 N. J. L. 196.)

Plowden says that the "intent of statutes is more to be regarded and pursued than the precise letter of them, for oftentimes things which are within the words of statutes are out of the purview of them, which purview extends no further than the intent of the makers of the act, and the best way to construe an act of parliament is according to the intent rather than according to the words." (2 Plowden's Rep. 464.)

Can we, by applying these or any other well-recognized rules of construction, ascertain the meaning which the legislature intended should be given to the word "solicitors"? The evident object of the law was to authorize the board of aldermen of Virginia City to fix and collect a license tax upon every kind and character of business that might be conducted or carried on within the corporate limits of said city. The act names almost every conceivable sort of occupation or business: "Auctioneers, assayers, barbers, bootblacks, bootmakers, * * * cobblers, brokers, factors, * * * general agents, * * * grocers, merchants, traders, * * * manufacturers, * * * public criers, bellringers, * * * solicitors, tailors, * * * tradesmen, artisans, * * * and stock brokers."

What was meant, in this connection, by the word "solicitors"? The other words apply to individuals who conduct or carry on some particular occupation or business. Does not this fact afford a key which will unlock and throw open the true meaning and intention of the legislature with reference to the word "solicitors"? In my opinion this word has the same specific meaning as the other words; that is, it applies to all individuals who are engaged or employed specially for the purpose of soliciting, importuning or entreating for the purchase of goods, etc. It is an independent occupation or business. The legislature only intended to reach those persons who might be employed in this particular business as a means of making a living. The assayers, barbers, and bootblacks, as well as the tailors, merchants, and tradesmen, solicit custom in their respective callings, but they are only required to take out a license as assayers, etc., to enable them to carry on and conduct their

particular occupation or business. The word solicitors, as used in the ordinance, does not apply to them from the mere fact that in conducting their business they solicit custom from the public.

In *Joyce* v. *City of East St. Louis*, the charter gave the city power "to license, tax, and regulate and control wagons and other vehicles conveying loads in the city." Joyce kept a family grocery store, and used a one-horse spring wagon, without having any license therefor, in delivering goods sold to his customers. He did not use the wagon for hire, nor in any other manner than in the prosecution of his business as a grocery merchant. The court said it was not intended by the charter to fix a tax upon such vehicles "as should only be used by persons in the prosecution of their ordinary private business," and that the true construction of the charter "does not authorize the licensing of all vehicles conveying loads in the city, but such, only, of them in respect to which it is proper and customary with municipal authorities to prescribe the rates of carriage, viz., those used * * * by common carriers in the city for hire." (77 Ill. 158.)

Of course, if any person combines within himself more than one distinct occupation or business, he could be compelled to take out a license for each occupation or business. (*Neal* v. *Commonwealth*, 21 Gratt. 519.) To determine this question, the good faith of the party may often be involved. (*Carter* v. *The State*, 44 Ala. 31.) But in every case, it is only the occupation or business that is taxed. The mere fact that a clerk, merchant or other person solicits orders or favors in their line of business, does not necessarily bring them within the law authorizing a license tax to be imposed upon solicitors.

The law means persons engaged in that particular class of business for a profit, or as a means of livelihood. (*Weil* v. *State*, 52 Ala. 19; *Gillman* v. *State*, 55 Id. 248; *Commonwealth* v. *Gee*, 6 Cush. 179; *Merriam* v. *Langdon*, 10 Conn. 468.)

It may be admitted that the legislature did not select the most appropriate word to express their actual meaning.

Traveling merchants or commercial agents would perhaps have been better; but, as was said by this court in *Thorpe* v. *Schooling*, "the intention of the legislature controls the courts," and "whatever that body manifestly intended, is to be received by the courts as having been done by it, provided it has in some manner, no matter how awkwardly, indicated or expressed that intention." (7 Nev. 17.)

Taking a plain, common-sense view of the statute, and keeping within the well-defined canons of construction, it seems to me that the word "solicitors," as used in the statute, does apply, and was by the legislature intended to apply, to that class of persons, of whom petitioner is one, whose occupation and business as conducted within this state is that of a solicitor, and that by virtue of said act the board of aldermen had authority to pass said ordinance, and that the courts are bound in such cases to sustain and enforce its provisions.

2. The city of Virginia, authority therefor being given in its charter, may require a license for conducting or carrying on any trade, business, or profession within its corporate limits, although an act of the legislature also requires a license to be taken out for conducting or carrying on the same trade, business, or profession within the county, and can enforce a penalty in case of a refusal to take out such license. (1 Dillon on Municipal Corporations, sec. 53; *Simpson* v. *Savage*, 1 Mo. 359; *Ambrose* v. *State*, 6 Ind. 351.) There are cases, like that of *Southport* v. *Ogden*, 23 Conn. 132, cited by petitioner's counsel, where the offense consists in the commission of an act also prohibited by the general law of the state, where the courts have held that, by the passage of the general law, the legislature intended to assume the exclusive regulation of such acts, and that if the by-laws of the city were sustained, and if the prosecution and conviction of a person under the general law would not be a bar to a subsequent prosecution for the same act under the by-law, the consequence would be that such person might be tried and punished twice for the same offense, and upon this reasoning the by-laws were declared invalid. (*Jenkins* v. *Mayor*, 35 Ga. 145; *Town of Washington* v. *Ham-*

*mond*, 76 N. C. 34.) . But in cases like the present no such reason or results follow. ' If petitioner refuses to take out either a county or a city license, and should be prosecuted and convicted in both cases for such refusal, he would not be twice convicted for the same offense. The conviction, in each case, is for an act of omission upon the part of petitioner. In one case it is his refusal to take out a county license as the law requires. In the other case it is his refusal to take out a city license as required by the ordinance. The law requiring parties to take out a county license does not, in our opinion, in any manner conflict with the law authorizing the municipality of Virginia City to pass an ordinance requiring such persons to also take out a city license.

We have not been referred to any authority, and we do not believe any can be found, in opposition to the views herein expressed.

The great weight of authority seems to sustain the position as stated by Cooley, that " the same act may constitute an offense against both the state and municipal corporation, and may be punished under both without any violation of any constitutional principle." (Cooley on Constitutional Limitations, 199, and authorities there cited; *Howe* v. *Treasurer of Plainfield*, 37 N. J. L. 145.)

3.   The ordinance does not discriminate against, or in favor of any class of citizens. It applies to all persons, irrespective of their place of residence, who may be engaged in the business therein designated, within the corporate limits of the city. (*Ex parte Robinson*, 12 Nev. 271.)

Petitioner is remanded into custody.

BEATTY, C. J., and LEONARD, J., concurring:

It is unnecessary, in my opinion, for the purpose of deciding this case, to ascertain the meaning of the word " solicitors," as employed in the amended charter of Virginia City. It is admitted that the petitioner is a traveling merchant—that is, he keeps a stock of goods in San Francisco and comes to Virginia City for the purpose of soliciting orders. He carries on the business of selling

goods in Virginia City, and he is none the less a merchant doing business there because he keeps his stock of goods in another state and travels about from place to place. The charter empowers the city of Virginia to impose a license tax upon merchants, and the class of persons described in the ordinance are merchants. It is of no consequence that the ordinance calls them "solicitors." If the city has authority to tax them as merchants, it may call them by any name it pleases.

Upon the other points discussed, I concur in the opinion of Justice Hawley, and I concur in the judgment.