[No. 1829]

## In Re PRIMARY BALLOTS

In the matter of the application of Leonard B. Fowler, for an order directing the County Clerk of Ormsby County, Nevada, to correct certain omissions in primary election ballots. **Rehearing granted,** and on rehearing **decision modified** by Justices Talbot and Sweeney.

The facts sufficiently appear in the opinion.

By the Court, Norcross, C. J.:

Leonard B. Fowler, deputy attorney-general and a qualified elector of Ormsby County, State of Nevada, has filed with each of the justices of the supreme court an affidavit authorized by and made in pursuance of the provisions of section 29 of the act in relation to primary elections (Stats. 1909, pp. 273–291), praying for an order directing E. O. Patterson, county clerk of Ormsby County, forthwith to desist from certain alleged wrongful acts committed, or about to be committed, and to correct certain alleged errors in the printing of the sample and official ballots for the primary election to be held on the 6th day of September, 1910.

Affiant has attached as exhibits, and made a part of his affidavit, sample ballots prepared by the county clerk of Ormsby County and, under his authority and direction, printed for use in said county for the Demooratic and Socialist parties. He also alleges a defect existing in the sample ballot printed for the use of the Republican party.

The affidavit further alleges that affiant "is a member of and affiliates with the Democratic party; that at said primary election your affiant desires to vote for some qualified persons to fill the following offices and to be candidates of the Democratic party for said offices: Justice of the supreme court, superintendent of public instruction, district attorney, justice of the peace, and regent of the university, short term. That for said

various offices no Democrat has filed a petition which would entitle his name to be printed upon the Democratic ballot. That your affiant desires to write in a blank space his choice for his party nominee for the various offices heretofore set forth. * * * That on said primary election ballot (sample, Democratic party) the following officers are omitted therefrom: Justice of the supreme court, superintendent of public instruction, district attorney, justice of the peace, and regent of the state university, short term. * * *

"That your affiant also alleges that he has a copy of the sample primary election ballot of the Socialist party, Ormsby County, Nevada, and that there is printed thereon the names of the candidates for the following offices: Choice for U. S. senator, representative in Congress, governor, lieutenant-governor, regent of state university, long term, and that the names of all other officers to be filled at the election in November of this year are omitted therefrom. * * *

"That affiant alleges that the same facts of omission that apply in regard to the primary election ballot of the Democratic party also apply in regard to the Republican party in the case of the office of district judge and that unless this error is corrected on the Republican official ballot the Republican voters of Ormsby County will be deprived of the privilege of expressing their choice of a nominee for judge of the district court of the first judicial district."

The affidavit further recites that the office of attorney-general has heretofore, upon request of an opinion from the district attorney of Nye County, rendered the following opinion in reference to primary ballots:

"Primary act says that to vote for a person whose name appears on the ballot stamp a cross (X) at right of name. Inference is that there exists the privilege of in some way voting for persons whose names are not on the ballot. I therefore advise that blank spaces be printed on the ballot for all officers where there are no printed names and under each group of names as provided in the act."

Upon the hearing our attention has been called to what purports to be sample ballots for the various parties printed for use in other counties in the state, under the direction of the clerk thereof, from which it would appear that there is not, upon the part of the various county clerks, a uniform construction of the law in relation to sample ballots.

The following excerpts from various sections of the primary act will aid in a determination of the questions presented:

"SECTION 1. * * * This statute shall be liberally construed, so that the real will of the electors shall not be defeated by any informality or failure to comply with all provisions of law in respect to either the giving of any notice or the conducting of the primary election or certifying the results thereof."

"SEC. 4. 1. At least sixty days before the time for holding such September primary election * * * the secretary of state shall prepare and transmit to each county clerk, * * * a notice in writing *designating the offices* for which candidates are to be nominated at such primary election. * * *

"3. In the case of the September primary elections for the nomination of candidates for city and county offices * * * the city clerk * * * shall cause the publication of notice of such primary election, together with a *complete statement of the offices* for which candidates are to be nominated. * * *"

"SEC. 5. The name of no candidate shall be printed on an official ballot used at any primary election unless * * * a nomination paper shall have been filed in his behalf as hereinafter provided by this act. * * *"

"SEC. 10. At least twenty-five days before any September primary election * * * the secretary of state shall transmit to each county clerk of any county a certified list containing the names * * * of each person for whom nomination papers have been filed in the office of secretary of state and who is entitled to be voted for in such county at such primary election, together with a

designation of the office for which such person is a candidate and of the party or principle he represents.

"Such county clerk shall forthwith, upon receipt thereof, publish under the proper party designation the *title of each office*, the names and addresses of all persons for whom nomination papers have been filed, the date of the primary election. * * *"

"SEC. 12. 1. All voting at the primary elections within the meaning of this act shall be by ballot. * * * It shall be the duty of the county clerk of each county to provide such printed official ballots to be used at any September primary election for the nomination of candidates to be voted for * * * at the ensuing November election. * * * The names of all candidates for the respective offices for whom the prescribed nomination papers have been duly filed shall be printed thereon."

"2. Official primary election ballots * * * shall be * * * as long as herein-prescribed captions, heading, party designations, directions to voters and lists of names of candidates, properly subdivided according to *the several offices to be nominated for*, may require; * * *."

"4. At least three-eighths of an inch below the voting precinct designation and the date of the primary election shall be printed * * * the following instructions to voters: 'To vote for a person whose name appears on the ballot, stamp a cross (X) in the square at the right of the names of the person for whom you desire to vote.'

"5. The instructions to voters shall be separated from the lists of candidates and the *designations of the several offices to be nominated for*. * * * The names of the candidates and the *respective offices* shall * * * be printed on the ballot. * * *"

"7. * * * Under each group of names of candidates shall be printed as many blank spaces, defined by light lines or rules, three-eighths of an inch apart, as there are to be candidates nominated for such office. * * *

"8. At the bottom of the last column on any official primary election ballot * * * there shall be left one

blank space defined by light lines or rules three-eighths on [of] an inch apart and which shall be preceded by the words 'County Committeeman.'"

Subdivision 9 of section 12 sets out substantially the form in which the primary ballot shall be printed. This form, under the heading "*State and District*," contains, in the enrolled bill, the names of all state and district officers to be elected by the people, excepting that of inspector of mines and clerk of the supreme court, the bill creating the former office having become a law subsequent to the approval of the primary act, and the latter office not having been considered an elective office for many years prior to the passage of said act (*State* v. *Douglass*, 33 Nev. 82); also the names of all county and township offices. Under each office designation—"U. S. Senator, Representative in Congress, Governor and Lieutenant-Governor"—appear three fictitious printed names, representing candidates, and the direction "Vote for one." Below these names appears no blank space. Under all the remaining designations of the state, district, county and township offices and the directions "Vote for one," "Vote for three," as the case may be, appear three blank spaces, without any fictitious names.

"SEC. 14.  *  *  *  On the tenth day before such primary election the county clerk shall correct any errors or omissions in the ballot.  *  *  * "

"SEC. 19.  The voter shall designate his choice on the ballot by stamping a cross (X) in the small square opposite the name of each candidate for whom he wishes to vote.  *  *  * "

"SEC. 24.  The person receiving the highest number of votes at a primary election as the candidate for the nomination of a political party for an office shall be the candidate of the party for such office,  *  *  *  and the elector receiving the highest number of votes of his party in his precinct for county committeeman shall be the county committeeman of his party for the ensuing two years.  *  *  * "

"SEC. 25.  The county committee of any party shall

consist of one member from each voting precinct in such county, elected at the last preceding primary election. * * * "

"SEC. 27. Vacancies occurring *after* the holding of any primary election shall be filled by the party committee, * * * as the case may be.

"SEC. 31. Any person who, being in possession of any nomination paper or papers and affidavits entitled to be filed under the provisions of this act, shall wrongfully either suppress, neglect or fail to cause the same to be filed at the proper time and in the proper place shall be guilty of a misdemeanor. * * * Any act or omission declared to be an offense by the general laws of this state concerning primaries and elections shall also in like case be an offense concerning primary elections as provided for by this act, and shall be punished in the same manner and form as therein provided, and all penalties and provisions of the law governing elections, except as herein otherwise provided, shall apply in equal force to primary elections as provided for by this act." Our primary election act was doubtless copied, in the main, from a bill pending in the legislature of the State of California, which bill became a law March 24, 1909, one day later than the approval of the primary act of this state. (Stats. Cal. 1909, p. 691.) This is evidenced by the fact that the act adopted in this state is in the main the same as the California act, having many identical provisions as well as a number of provisions found in the California act which are incongruous with political conditions in this state— for example, provisions such as the appointment of congressional and assembly district committees. The act appears to have been hastily prepared and adopted and the intention of the legislature has not in all cases been made clearly manifest from the letter of the act. This want of definiteness of expression has occasioned a contrariety of construction upon the part of various county clerks, hence this proceeding.

Does the law require the printing on the primary ballot of every political party the name of every elective office

for which a candidate or candidates may be nominated at such primary election, even though no candidate has filed nomination papers requiring his name to be printed on the ballot? We think the law certainly makes provisions for such printing. The form of the ballot to be substantially followed, set out in subdivision 9 of section 12, sets out the name of every elective office then known by the legislature to be such, some with and some without names of candidates following. Subdivisions 2 and 5 of section 12 both make specific mention of the printing on the ballot of office designations. Subdivision 1 of section 4 requires the secretary of state to certify to the several county clerks a notice designating the offices for which candidates are to be nominated. Subdivision 2 of the same section requires the clerk to publish such list. Section 10 provides for the certifying by the secretary of state of the names of all candidates who have filed nomination papers, together with the designation of the office for which each person is a candidate, and that upon receipt of such certificate the county clerk shall forthwith "publish under the proper party designation the *title of each office,* the names * * * of all persons for whom nomination papers have been filed," etc.

Nowhere in the act is there any expression or intimation that the office designation is not to be placed on the ballot unless some candidate has filed nomination papers. Upon the contrary, we think, from the reading of the various sections, it is clear the legislature intended to provide for the placing of the names of all elective offices on all party primary ballots.

The next question presented is: Did the legislature intend that there shall be placed below each office designation one or more blank spaces, equal to the number of candidates to be nominated for the particular office, as the case may be, where there are no names of candidates printed on the ballot, and to follow such names where there are such so printed?

We think such is the proper construction of the act. It is true the form of the ballot, set out in the statute to be

substantially complied with, does not contain a blank space below the fictitious names of candidates, and this has doubtless misled a number of the county clerks. Upon the other hand, where there are no purported names of candidates under an official designation there are three blank spaces, in each instance, although in most of the cases only one nominee could be voted for. It would seem that this form was prepared with regard more for its appearance to the eye than as an attempt to follow very carefully the statutory provisions prescribing how it should be prepared. Even the instructions to voters, as printed in the form, uses the word "mark" where the controlling statutory provisions use the word "stamp." The form of ballot appearing in the statute is intended as an aid to the clerk in preparing the ballot, but the form must give way to specific provisions of the statute where there is a conflict in substantial particulars.

Section 7, *supra*, provides that "under each group of names of candidates shall be printed as many blank spaces * * * as there are to be candidates nominated for such office."

The word "group," as used in the foregoing paragraph of the section, does not mean that blank spaces are to be placed on the ballot only where there are two or more candidates whose names appear following the name of the office, as is manifest by the use of the same word in other provisions of the act, particularly in sections 5 and 6. For example, take the expression: "Each group shall be preceded by the designation of the office for which the candidates seek nomination and the words 'Vote for one' or 'Vote for two' or more, according to the number to be nominated." This provision of our statute is identical with the provision in the California statute and the form of the ballot set out in the California statute gives a group of fictitious names following each office designation, but this provision has been construed by the Supreme Court of California to mean that there shall be a blank space below such office designation, even though the name of no candidate is printed on the ballot. (*Fickert* v. *Zemansky,*

108 Pac. 269). Any other construction would be unreasonable and would fail to carry out the manifest intent of the legislature. As this court said in *State* v. *Clark*, 21 Nev. 337: "We are not always to be guided by the letter of the act. We are to seek for the meaning that the words were intended to convey, and endeavor to carry out the intention of those adopting it."

Having determined that it was the intention of the legislature to provide for placing on the ballot the names of all office designations, for which offices candidates are to be nominated, together with a blank space, we come to consider what was the intention of the legislature by such provision.

It is manifest if such blank space cannot be used for any purpose, it is mere surplusage, and had better be left off the ballot, for, in such case, it could only serve to confuse the voter, and in many instances might be the means of preventing his ballot from being counted. Appearing on the ballot, the conclusion of the voter might be that the blank space was intended for him to write in the name of his choice if he so desired. We cannot impute to the legislature a deliberate intent to deceive the voter by the provisions of an act the purpose of which was to place in the hands of the entire membership of a party the control of party nominations. It is a cardinal rule of statutory construction that statutes shall be construed if possible so as to give all the language effect.

That these blank spaces are intended for the voter to write in the name of his choice for a candidate for a particular office, in a case where there are no printed names of candidates, or he is not satisfied to vote for any of the candidates whose names are printed on the ballot, is made entirely clear in the provisions of the California act. In addition to the provisions for instructions to voters contained in subdivision 4 of section 12 of our act, *supra,* subdivision 4 of the California act contains the additional provision: "To vote for a person whose name is not printed on the ballot, write his name in the blank

space provided for that purpose." If it could be said that our act was copied from the California act and that we could presume that the legislature knew of this provision, then there would be room for argument that this provision was left out of the Nevada act *ex industria,* and, hence, a manifestation of an intent that such provision of the adopted act would not be incorporated into our laws. But we do not know and cannot say how this provision read in the bill pending before the California legislature. Our subdivision 4 may have been a literal copy from subdivision 4 as it appeared in the proposed California measure at the time of the preparation of the bill introduced in the Nevada legislature, and the California measure may have subsequently been amended in the particular mentioned to make more clear the purpose of other existing provisions. In any event, the mere fact that the California act contains a specific provision directly authorizing the writing in of names of candidates by the voters, cannot, of itself, be advanced as an argument that the Nevada legislature did not intend so to provide, for the reason, before stated, that the Nevada act became a law prior to the California act. The intention of the legislature of this state must be gathered from the provisions of our act, independent of the reading of said subdivision 4 of the California act.

Nowhere in the act is there any express provision that no name shall appear on the ballot except those printed thereon. Section 5, *supra,* provides that "the name of no candidate shall be *printed* on an official ballot  *  *  * unless a nomination paper shall have been filed," etc. Ought we to interpolate after the words "be printed" in the section *supra* the words "*or otherwise appear?*" We must do so, if there can be no candidates for a nomination for an office, except those who have filed petitions. But the reading of these words into the section renders meaningless and destroys the force of all provisions of the act relative to blank spaces and the printing of official designations, where there are no printed candidate's names. Such a construction is not permitted if it can be avoided.

The very language of section 5, however, taken by itself would indicate that there might be candidates other than those whose names are printed on the ballot. Taking that section alone, the reasonable construction, we think, would be that if a candidate wants his name printed on the ballot he must file a nomination paper. Reading section 5, together with other provisions of the act, particularly section 12, and it is clear, we think, that candidates whose names may appear upon the ballot are not limited to those whose names may lawfully be printed on the ballot. Subdivision 1 of section 12, among other things, provides "The names of all candidates for the respective offices *for whom the prescribed nomination papers have been filed shall be printed thereon.*"

[*Note*—Italics, where used in this opinion, are ours.]

This language of itself does not imply that there can be no candidates other than those whose names are printed on the ballot. Certainly such intention ought not to be imputed in the face of other provisions indicating that names may appear thereon otherwise.

As was said by this court in *Roney* v. *Buckland*, 4 Nev. 57: "In the interpretation of any phrase, sentence or section of a law, the first thing to be ascertained is the ultimate and general purpose of the legislature in the enactment of the law. When that is known or ascertained, then every sentence and section of the entire law should be interpreted with reference to such general object, and with a view of giving it full and complete effect, extending it to all its logical and legitimate results. That object must, of course, be ascertained from the act itself. But the whole act must be taken together, and when the general object is apparent any fugitive expression, or any sentence which it is impossible so to interpret as to make it accord with and further such general object must be ignored entirely." (*Bank* v. *Quillen*, 11 Nev. 109; *State* v. *Ross*, 20 Nev. 61; *State* v. *Toll Road*, 10 Nev. 155; *Ex Parte Silenhauser*, 14 Nev. 365; 1 Kent's Comm. 461; Sutherland's Statutory Cons., sec. 241.)

In *State* v. *Ruhe*, 24 Nev. 261, this court quoted with

approval the following from Black on Interp. Laws, p. 83: " 'No sentence, clause, or word should be construed as unmeaning and surplusage if a construction can be found legitimately which will give force and preserve all the words of the statute. It is a canon of construction that, if it be possible, effect must be given to every word of an act of parliament.' "   *   *   *·

The purpose of the primary act was to place·in the entire electorate of a party the power to directly name party candidates for office and· to do away with the old system of making such nominations through the means of delegates elected to a convention. The main purpose of the primary act is very distinct from the object sought to be accomplished by what is familiarly· known as the Australian ballot law. The latter law was designed to protect the voter at general elections from any undue influence in casting his ballot in a manner other than in accordance with the dictates of his own will. This law has always been construed with this main end and purpose in view. That act makes secrecy the greatest means of protecting the voter in the free exercise of his right of suffrage, hence the provisions regarding distinguishing marks and the policy of the courts in determining what are and what are not such marks.

As the central object and purpose of the primary election law is to place in the hands of all of the electors of a party the power of choosing the party nominees for office, the act must be construed with that end and purpose in view. Manifestly, the act was not made primarily for for the benefit of party candidates, but rather to provide a means for the party electors to express their choice. It is not always the case that those who are most anxious to serve the public in office are the ones who appeal most strongly to the private citizen. Very often it is the case that those citizens who are the best qualified to serve the public care very little about public office, and do not voluntarily put themselves out to become candidates, while on the other hand, those who want office for their own personal ends, can always be

relied on to take the necessary steps to have their names upon a ballot. If the voter's choice is limited only to those names which are printed on the ballot, then very often, according to the voter's view, he is obliged to vote for one whom he may regard as incompetent or worse, or not vote at all, and is without the privilege of indicating his real choice.

We think the legislature intended, by providing for the blank space, that a party elector may write in the name of any qualified elector for whom he wishes to cast his vote for nomination for any particular office and may then vote for such elector by stamping a cross thereafter. In that way only can the members of a political party make a nomination where no candidate has filed nomination papers. Suppose a party had but one candidate for the nomination for an office like that of governor or United States senator, and the person who had filed his nomination papers was so generally satisfactory to his party that no other candidate is likely to oppose him, and that prior to the primary election such candidate should die, can it be said that the legislature did not intend, in such a case, that the party shall have some means of expressing any other choice for such a nomination? We think not.

Under the prior existing primary act, which prevailed in this state for many years, the members of a political party voted for their choice for delegates to a nominating convention in any way they pleased, generally by writing the names of their choice for delegates, although in the more populous precincts printed names on a slip were frequently used. The delegates in a convention expressed their choice for nominees by writing the names thereof on ballots. In construing statutes, it is proper to consider the prior existing law, the evils therein sought to be corrected, and the remedy provided.

There is nothing in the present act which indicates an intention of limiting the method of indicating a full and free choice which the elector formerly had, although it only extended to the selection of delegates.

In determining that it was the intention of the legisla-

ture that party electors are not limited to voting for those candidates whose names are printed upon the ballot, but that they may write in the blank space, provided for such purpose, the name of their choice, we are aided by the provisions for a similar blank space for county committeeman. This provision does not appear in the California act, and hence may be said to have been inserted in the Nevada statute *ex industria*. Nowhere is there any specific provision that a name may be written therein, but there are provisions for canvassing the vote for such committeeman, the meeting of the committee composed of those so selected, and matters of that kind. If a name is not authorized by the act to be written in, then the other provisions of the act for canvassing the vote, etc., would be senseless, and, besides, there could be no party county organization. That the legislature intended that the voter could write in the name of his choice for county committeeman, is manifest. If the legislature did not consider it necessary to specifically provide for writing in the one case, it doubtless did not in the other, but the legislative intent is, nevertheless, clear in both cases.

There is no similar provisions in the primary act limiting the conditions under which a name may be written upon the ballot, as appears in the Australian ballot law (Comp. Laws, 1704.) Those provisions have peculiar application to the latter law and are totally inapplicable to the primary law.

Under the Australian ballot law the writing of a name upon a ballot, except to fill a vacancy under the conditions expressly provided by that act, is specifically prohibited, and the same constitutes a distinguishing mark. (*State v. Sadler*, 25 Nev. 190.)

While the writing of a name upon the official ballot at the general election, by an elector, violates the purpose of that act, in that it tends to destroy the secrecy of the ballot, the writing of the name of a qualified elector on a primary ballot, in order to vote for his nomination for office, is in accordance with the spirit and purpose of the

latter act, to wit, the selection of party candidates by the popular choice of the party.

Under the view we take of the primary act of this state, the decision of the supreme court of California in the Fickert case, *supra*, relied on by the deputy attorney-general in his argument, applies with equal force to our act, and that, as held in that case, any qualified elector of any party may at a primary election vote for any quali-fied elector for nomination by his party for any particular office by writing his name upon the ballot in the appropriate blank space and stamping a cross thereafter.

Were it not for the provisions directing the printing of a blank space on the ballot for county committeeman (carrying with it the manifest intent that such space is to be used by writing in the choice of the party elector for such committeeman), it might, with much force, be urged that the provisions of section 31, extending "all penalties and provisions of the law governing elections, except as herein otherwise provided, shall apply in equal force to primary elections as provided by this act," prohibits the writing of names of candidates for office upon the ballot, because such writing on the general election ballot is within the penal injunction against distinguishing marks. But an argument of this kind is without force when it is conceded that the elector may write on the ballot the name of a committeeman.

It is clear, also, that the blank spaces are not provided, as in the Australian ballot law, for use for filling vacancies, for there is no means provided in the primary act for filling vacancies except after the primary election. (Sec. 27, *supra.*)

It is ordered that the county clerk of Ormsby County cause to be printed for use at the primary election to be held on the 6th day of September, 1910, ballots for the Democratic, Republican and Socialist parties containing the designation of every office to be filled by election at the November general election, regardless of whether or not nomination papers for candidates for any particular office have or have not been filed, and that a blank space

three-eighths of an inch wide, together with a voting square for stamping the cross, as provided in the statute, be placed below the name or names of candidates for each particular office, where names are printed on the ballot, and below the office designation where no such names are so printed.

SWEENEY, J.: I concur.

TALBOT, J., concurring:

I agree with much that has been said by the chief justice. As it would be vain to have extra spaces upon the ballots unless they may be utilized, the real question is whether the legislature intended to limit the names of candidates to be voted for and nominated at the primary election to those going upon the ticket by petition as party candidates or later as independent candidates, and having their names printed upon the ballot, as expressly allowed; or may the voters at the primary election write on the ballots the names of any electors they may desire, other than the party or independent candidates for the nomination printed upon the ballot? In other words, did the legislature intend to have the secrecy and benefits of the Australian ballot system, which has been in force in this state since 1891 at our general elections, apply hereafter to the primary elections, so as to prevent at them the successful intimidation or purchase of voters and the abuses which were sometimes practiced under the old method of balloting openly, but which are no longer possible at the general elections? Whether it is not as desirable to guard the voter with secrecy at the primary as at the general election, excepting that frauds at the primary may become known and may react at the general election against a candidate for whose advancement they are practiced, is a matter of policy for the legislature and not for the courts to determine further than to ascertain the legislative will in construing the language of the enactment. Primary elections had not come in vogue at the time of the adoption of the constitution, and it is not assumed that the elector has any greater inher-

ent rights at them or may not be as much restricted in the method of voting at the primary by reasonable regulations as at the general election.

Uncertainty arises because the late direct primary election act provides that under each group of candidates there shall be printed as many blank spaces as there are candidates to be nominated for the office, but with no express direction, as in the California statute, that names may be written in these spaces, and because our act authorizes the leaving of a blank space, preceded by the words "County Committeeman," and makes provision for the canvassing of the vote for county committeeman, without specifying the method by which the names for county committeeman may be placed on the ballot, and states that "all penalties and provisions of the law governing elections, except as herein otherwise provided, shall apply with equal force to primary election as provided for by this act." By this last condition our Australian ballot law, with its secrecy and safeguards, and which prohibits the writing of names upon the ballot, and which concededly applies to elections, may become applicable to primary elections unless it is otherwise provided in the late act. In this connection, there is force in the contention that the provision for blank spaces under office designation and for a space under the name of, and the canvassing of the name for, county committeeman, when the statute designates no method for printing or placing names for that position upon the ballot, leads to the implication that the legislature intended that names might be written in for county committeeman, and inferentially for other positions, the writing in of the names for which would not destroy the secrecy of the ballot any more than the writing in of the name for county committeeman. It is necessary to hold that names may be so written, in order to give any force to these provisions or to have a county committee elected. 1 am not constrained to favor a construction which would lead to such undesirable results as would occur under the statute as it now exists if spaces are not provided

and names are not allowed to be written in them. If hereafter the legislature, representing the people of the state, deem it wise to guard primary elections with the same secrecy which prevails in general elections a new statute can be easily framed which will clearly indicate this intention and at the same time provide for the election of county committeemen and for the nomination of candidates by the voters after the time has expired for having printed upon the ballots the names of party or independent candidates.

As our act is mostly the same and has sections relating to assembly districts and other conditions in California which do not prevail in this state, it may be fairly inferred that it was largely copied from the bill pending before the California legislature; and as ours omits the direction for the writing in of names and it does not appear that this omission was not intentional on the part of the legislature, and that the provision relating to spaces and county committeemen was not retained by oversight, the same as other parts of the California bill were retained, or that upon more mature consideration the legislature would not have eliminated any language of the statute which might, even by implication, lead to the inference that names might be written upon the ballot, the proper construction is not clear. But when it is doubtful whether the provisions mentioned were retained inadvertently, to give them effect when they are a part of the statute would seem more in consonance with the ordinary rules of construction. As with a new machine or garment, a new law may not be perfect or work to the best advantage upon first trial. It is to be expected that experience with the act will show defects and errors which it will be desirable to have corrected by future legislative action.

For these reasons I concur in the order directing that a blank space, followed by a square for stamping the cross, be placed below the name or names of candidates for each particular office where names are printed on the

ballot and below the office designation where no such names are printed.

## ON REHEARING

*P. B. Ellis,* for Petitioner.

Opinion by SWEENEY, J.:

This proceeding, instituted by the deputy attorney-general, Mr. Fowler, pursuant to the provisions of section 29 of the act in relation to primary elections (Stats. 1909, pp. 273–291) is again before us to determine whether or not voters at the coming primary elections to be held September 6, 1910, are to be permitted to write in names of any electors they may desire to nominate for the respective offices to be voted for, and for a determination of how the ballots must be printed by the various county clerks in certain respects alleged about to be violated.

After a very thorough review of the former application and analysis of the primary act, and the opinion heretofore prepared by the chief justice, I am unable to concur in all of that opinion and believe the same must be modified as hereafter disclosed, to properly comply with and carry out the intent of the legislature with regard to the provisions of the act in question attacked. These provisions now assailed are provisions pertaining to the proper character of ballot which the clerks of the various counties must order printed, and by reason of candidates failing to appear for nomination for several offices by the several parties whether or not it is necessary, where no candidates have offered themselves for nomination, for the voters to write in the names of those whom they desire to nominate for those vacant offices and for other offices as well.

In my opinion, as heretofore expressed in the case of *Riter* v. *Douglass,* where this court unanimously sustained the constitutionality of the direct primary law, one of the main objects of the primary law is the preservation of the integrity of parties. To allow voters of various par-

ties to promiscuously nominate men of other political faith as the nominees of a different party to which they belong, is totally at variance with my conception of the true intent of the object of the primary law. In my opinion, in the primary election, which is an election for the purpose of allowing the electors of each party to select their nominees, as distinguished from the general election where the entire electorate choose the officers to administer the affairs of government until the succeeding election, each party should have complete and exclusive control of determining its choice of nominees for its own party and these nominees must be selected from among its own members. To allow Republicans to nominate Democrats as Democratic nominees of the Democratic party, or *vice versa*, which follows if we allow the writing in of names indiscriminately by the voters, is totally at variance with my conception of the subject of the primary law and my opinion heretofore rendered.

The legislature in adopting the California primary act, expressly omitted a provision contained in the California act to the effect that voters were privileged to write in their choice as candidates for the respective offices, whether candidates' names were printed on the ballot or otherwise. In eliminating this provision from the Nevada statute, is conclusive proof to my mind, in construing our Nevada statute, that we are justified and bound to draw the conclusion that the Nevada legislature intended to confine the voters to the names of the candidates appearing upon the ballot, by reason of having complied with the provisions of the statute, which designates the requirements to be complied with to get on the ballot. Therefore, the California cases cited by the chief justice to sustain his construction of the statute in allowing names to be written in promiscuously by the electors of the various parties for any nominees they desire, irrespective of whether or not their names are regularly printed on the ballot in compliance with the requirements of the statute, or otherwise, are not applicable to the questions

raised under our Nevada statute, nor binding on this court to heed or follow.

The primary law expressly provides how any qualified voter who desires to have himself voted for any office as the nominee of his party, may secure three per centum of the voters of his·party, pay his fee and comply with other requirements, provided in the act, whereupon his name will be printed on the official primary ballot, to be submitted to the voters of his party, and if he secures the majority of the votes of his party for that office he will be the party's nominee for that office. If a candidate does not desire to comply with the provisions of the primary law, and take the chances of securing the majority of his party's vote to become his party's regular nominee, he can get on the official ballot by running as an independent candidate, by complying with the law regulating independent nominations. Every qualified voter has the same equal right to get on the ballot as a candidate, if he desires to comply with the law, and in my opinion is in no position to complain if he fails to avail himself of the opportunity of becoming a candidate which entitles his name to appear on the ballot. To allow individual voters to promiscuously nominate a man who does not offer himself as a candidate, and to authorize every voter to write in any name of any voter, irrespective of his politics, for any position, without the consent of such persons, and thereby encumber the ballot with names of individuals who, even if elected, would not care to qualify, and to allow voters of one party to name individuals of another party, as the candidates of a party in whose principles he does not profess or believe, is not only inequitable and illegal, but totally inconsistent with the object of the law.

I am therefore of the opinion that voters are obligated to vote for only those candidates whose names appear printed on the ballot, and that they are not entitled to vote or write in any name for any candidate unless his name appears on the ballot.

The primary law, however, provides for the election

at the primary election for "County Committeeman" and how the committee is to be formed and organized from the committeemen elected from the various precincts. The law in this respect does away with the method heretofore in vogue, wherein the central committees governing political parties were selected by convention method. The law expressly provides for the canvass of these county committeemen, and in my judgment it was the intention of the legislature to allow voters of the various precincts the privilege of writing in their choice for this minor office on the ballot. The selection and election of officers of county and state governments has been signally segregated from the provisions of the act of the legislature regarding the selection and election of "County Committeemen."

I am therefore of the opinion that at the primary election voters are privileged and authorized, without destroying the validity of their ballot, to write in the name of the "County Committeeman" they desire to vote for. This office of "County Committeeman," however, is the only office for which a voter is authorized to write a name on the ballot.

The legislature, when they eviscerated the provision of the California statute, authorizing the voter to write in on the ballot the name of any candidate he desired to vote for, irrespective of whether or not his name appeared on the ballot, in its haste inadvertently left the provision for blank spaces under the names of the candidates regularly appearing thereon. This inadvertent act of the legislature in providing for these unnecessary spaces, however, as I construe the statute, would not warrant us to judicially legislate in the act the provision they intentionally struck out, to wit, of allowing the voters to write in the names of candidates in the blank "appendicitic" spaces. These spaces, however, are in my judgment totally unnecessary, and I am therefore of the opinion that clerks should be directed not to print them, nor to print the official designation for any office for which no

candidate has been presented by regularly complying with the law.

It is represented to the court that in certain counties the clerk has already printed in on the ballots these blank spaces, and, the secretary of state not having in his possession other paper to supply, that if this court should hold these spaces unnecessary and not to be printed, these counties, owing to the shortness of the time before the primary election, would be disfranchised. Entertaining the view I do of these unnecessary blank spaces, and the intent of the legislature to confine voters to voting for candidates of their own political faith in their own primaries, I am of the opinion, in view of the fact that all the ballots are the same and uniform, in those counties where the clerks have too previously printed their ballots containing the unnecessary blank spaces, that it is immaterial whether they have done so or not, and therefore there is no legal necessity of us ordering these respective clerks of these counties to reprint their ballots. I desire, however, to be strictly understood as holding that in the last referred to counties, no voter is privileged to vote for any candidate except those whose names regularly appear on the ballot by writing in any name, with the exception that they may vote for a "County Committeeman" by writing in the name for this respective office. Whether or not a "County Committeeman," as referred to in the act, the legislature intended to treat and consider in the same status as a "candidate" for office, it is unnecessary for us to determine, as the question is not involved.

Subdivision 8 of section 12 of the act, providing for the election of "County Committeeman," reads: "At the bottom of the last column on any official primary election ballot to be voted in September for the nomination of candidates to be voted for at the ensuing November election, there shall be left one blank space defined by light lines or rules three-eighths on [of] an inch apart and which shall be preceded by the words 'County Committeeman.'"

It will be noted that this section makes no provision for a blank space, to the right of the blank space for the name, to stamp an X and specifically in subdivision 7 of section 12 of the act providing for such a blank space opposite the names of candidates, whose names are printed on the ballot. This is immaterial, however, and in my opinion, in order to remove any doubt which may exist in the mind of the voter, who desires to vote for a committeeman by writing in the name as to whether he should make an X opposite the name he may write in, it is immaterial whether he may do so or not, and that, if he chooses to both write in the name and mark an X after the name he may write in, or simply write in the name without the X thereafter, his vote should be counted either way.

In conclusion, therefore, I am of the opinion that no voter is privileged to vote for any candidate whose name does not appear on the ballot by writing in any name, but that each voter is privileged to write in a name of anyone for whom he may desire to vote for as "County Committeeman"; that the clerks of the various counties should not print additional blank spaces under the names of candidates whose names are printed on the ballot, but in those counties where the clerks have so printed such spaces that they are not obligated to reprint the ballot for the reasons above assigned; further, that the official designations of offices for which no candidate has been nominated should not be printed on the ballot.

I also concur in the views expressed by Justice Talbot, in separate opinion, covering these points, filed this day, which comes to the same conclusions on the points involved which I have above expressed.

The various clerks will, therefore, be guided accordingly in the preparation and printing of their primary election ballots; and the orders heretofore made pursuant to the opinion by the chief justice will be modified accordingly.

Opinion by TALBOT, J.:

After reconsidering questions presented in relation to the form of primary ballots, and studying more carefully

the various provisions of the late primary act, which are so uncertain in their meaning as to have led to differences of opinion by county clerks charged with the execution of the law, by district attorneys as their legal advisers, and by others, lawyers and judges, we have finally arrived at the following conclusions regarding the printing of spaces upon the ballot and the writing of names thereon at the primary election:

This uncertainty is caused mostly by the provision in subdivision 7 of section 12 that "under each group of names of candidates shall be printed as many blank spaces, defined by light lines or rules three-eighths of an inch apart, as there are to be candidates nominated for such office," by the direction in the following subdivision (8) that at the bottom of the last column on the primary ballot there shall be left a space preceded by the words "County Committeeman," and by later sections in the act which provide for the counting and certification of the vote for county committeeman, when the act nowhere provides for the writing of names in any of these spaces, or otherwise, on the ballot. Regardless of whether the clause in section 31, stating that "all penalties and provisions of the law governing elections, except as herein otherwise provided, shall apply in equal force to primary elections, as provided for by this act," makes the Australian ballot law, which applies to general elections, applicable to primary elections, and regardless of whether it is the purpose of the primary act to guard the primary elections with secrecy, under the ordinary rules of construction the intention of the legislature, as far as gleaned from the different sections of the act, ought to govern our conclusion. These are not so clear or certain that even legally trained minds, after careful study of the whole act, may not change or differ as to the meaning of some of these provisions. We think that by providing for a blank space following the designation of county committeeman, for the canvass and certification of the vote for county committeeman and for a county committee when there is no provision in the act for nomi-

nating or printing names for county committeeman, and no way by which they may be elected or by which a county committeeman may be selected except by writing in the names, it is the natural inference that the legislature intended that the voter should write the name of his choice for county committeeman in the space under that designation on the ballot.

The same reasons do not apply to the blank spaces directed to be left upon the ballot under each group of names of candidates. Not only is there no direction in the statute for writing names in these spaces, but there is no provision for canvassing or certifying any names written in them. The provision for these spaces is the same in the California statute as in ours, and in neither act is there any provision for printing blank spaces after the designation of offices for which no candidates have appeared by petition or had their names printed upon the ballot. Yet the Supreme Court of California properly directed that blank spaces be left upon the ballot after these office designations. By express provision of the statute in that state the voter was authorized to write in the names of persons who had not filed petitions or had their names printed upon the ballot. Under the circumstances the spaces were needed, and it would have been inconsistent to have deprived the voter of the privilege of having them for writing the names under office designations when the ballot did not have printed upon it the names of any candidates for those offices, while the statute authorized him to write in the names of the persons who were his choice for any offices and provided blank spaces for this purpose under the printed names of candidates, but omitted, possibly inadvertently, to provide such spaces under the names of office designations which were not followed by any printed names of candidates.

The decision in the Fickert case (108 Pac. 269) was based upon the will of the legislature and followed the statute, which expressly authorized the voter to write any names he desired on the primary ballot. Our legislature has not included this provision in our statute, and we are

led irresistibly to the conclusion that by this omission it
was not intended that the voter should be allowed to write
in the names of persons for offices or for any position
other than that of county committeeman, for which pro-
vision is made, as before stated.   Under this view it is
not necessary to place on the ballot any spaces under the
printed names of candidates, for the act nowhere author-
izes the writing of names in these spaces by the voter
nor that other use be made of them.

It may be inferred that by oversight the legislature
failed to eliminate from the statute the provision that
they be placed upon the ballot, at the time the provisions
of the California bill authorizing the writing in of names
was omitted from our act.   As the voter there was
allowed to write in names, the spaces were needed, both
under the printed names of candidates and under the
names of office designations where there were no names
of candidates printed on the ballot.   But as our statute
does not authorize the writing in by the voter of names
in either case, it is not necessary that the lines be placed
upon the ballot in either.   As section 27 only allows the
filling of vacancies occurring after the primary election,
there is no way by which these spaces can be used for
filling vacancies as spaces may be used on the ballot pro-
vided for the general election.

The rule that courts should endeavor to give effect to
all the language in the legislative enactment is undoubted,
but it ought not to be carried to the extent of requiring
judicial legislation to give it force.   It would be extend-
ing the principle too far to hold in this case, because there
is merely a provision in the statute, possibly and appar-
ently retained there by inadvertence, directing that spaces
be placed after the printed names of candidates, that there-
fore the legislature intended that the voters might write
names in those spaces upon the ballot when the provision
authorizing such writing is omitted from the act.   This
would in effect reverse the action of the legislature and
judicially interpolate into the statute the very provision
which they had eliminated.   It would be giving the same
interpretation and effect to the statute in this state, which

fails to authorize the writing upon the ballot of any names the voter may desire for candidates, which has been given to the California act, which expressly carries such authorization, and would give life and force in this state to a provision of the California act which has been decapitated and never included as a part of the statute by our lawmaking power.

Section 2 of the primary election act provides:

"All candidates for elective public offices shall be nominated as follows:

"1. By direct vote at primary elections held in accordance with the provisions of this act; or

"2. By nominating petitions signed and filed as provided by existing laws."

Apparently these are intended as words of limitation, and allow nominations to be made only in accordance with the primary act or by nominating petitions, as formerly, the time for which in this campaign has not arrived and in regard to which there is no question before us for solution. Consequently we are limited to considering how nominations for elective offices may be made "in accordance with the provisions" of the primary act. In its various sections no method is found by which candidates may be nominated or have their names placed on the ballot at the general election, except by first filing petitions and having their names printed upon the primary ballot, and by receiving the highest number of votes at the primary election for the nomination sought. As the act nowhere provides for the writing in of names of candidates or persons desired for elective offices, nor for the canvassing or certification of names written upon the ballot for any position excepting that of county committeeman, it follows that if a person whose name is not printed upon the ballot should receive the highest number of votes at the primary election by having his name written upon the ballots, he would not thereby be nominated within the limitations of section 2, which allows nominations to be made only in accordance with the provisions of the primary act or by nominating petitions.

We do not think it would be within the language, pur-

pose or spirit of the act to allow any one or more members of a political party to become candidates either upon election day or weeks or months in advance and receive votes by the writing in of the names and have these votes canvassed and certified for them the same as if they had obtained a petition with three per cent of the voters and filed and paid the fee for the same. If this could be done candidates, like mushrooms over night, might spring up on the eve of the primary election, contrary to the general policy of the act, which provides for periods of time and certifications which give notice to the electorate. Voters in different precincts and in the same precinct could cast their ballots for numerous persons, a part or all of whom were not seeking or wanting the office, and the act makes no provision for the resignation or withdrawal of a name of anyone who has been nominated or received the highest number of votes at the primary election. It is contended that the petitioner and voters generally ought to have the inherent right to write in the name of any person they desire to have elected to an office. Unless the person selected desires to hold the office and there is at least a possibility that he may be elected, the disallowance of the writing in of his name does not deprive the voter of any substantial beneficial right. It is hardly possible that a candidate or person whose name the voter desires to write on the ballot could be elected if a petition signed by three per cent of the voters could not be obtained for the purpose of having his name written upon the primary ballot.

It may be conceded that the legislature can make only reasonable regulations, and cannot, under the guise of regulation, pass and have enforced laws which will in effect prohibit the electors from becoming candidates at the general election. The requiring of a petition signed by a small percentage of the voters is not deemed such a prohibition. The decision of this court, holding that the writing of the name upon the ballot at general elections distinguishes and invalidates it, warrants the conclusion that the legislature may also prohibit the writing of names upon the ballot at the primary election and may

restrict the voting to such candidates as have by compliance with reasonable regulations secured the printing of their names upon the primary ballot.

Whether it is as desirable to guard the voter with secrecy at the primary as at the general election, when frauds at the primary may become known so as to react at the general election against a candidate for whose advancement they are practiced, is a matter of expediency for the legislature and not for the courts to determine, further than to ascertain the legislative will in construing the language of the act. However, it is apparent from what we have said that our conclusions as to the questions before us relating to the form of ballots would be the same whether the legislature intended to have the secrecy and benefits of the Australian ballot system, which has been in force at our general elections since 1891, apply hereafter to the primary elections, so as to prevent the successful intimidation or purchase of voters and the abuses which were sometimes practiced under the old method of balloting openly, but which are no longer possible at the general elections. It may be expected that the primary act as construed by the courts will not prove perfect upon first trial, and that it will show defects which will be desirable to have corrected by legislative action.

Modifying the views which we entertained after the first hearing, at which argument was made on behalf of the petitioner only, and which we formed hastily and before we had time to give the matter mature consideration, we adhere to the conclusion that as the statute directs that at the bottom of the last column on the primary ballot "there shall be left one blank space, defined by light lines or rules three-eighths of an inch apart, and which shall be preceded by the words 'County Committeeman,'" these words and this space ought to be printed on the ballot accordingly, so that the name of a person for whom a voter desires to vote for county committeeman may be written in and thereafter canvassed and certified as directed in other sections. But as there is no provision in the statute for the writing in of names

or placing upon the ballot the designation of offices for which no candidates or printed names appear upon the ballot, and no provision in the statute for the placing of spaces under office designations for which there are no candidates, and no provision for allowing, certifying or canvassing votes for candidates for public offices cast in any way excepting votes cast by putting a cross after the printed name of the candidate, the names of officers for which no candidates have filed petitions need not be printed upon the ballots. It is also unnecessary to insert under the groups of names of candidates the blank spaces designated in subdivision 7 of section 12, for the reason that these would be an unnecessary appendage, because there is no provision for their utilization. If they are already printed upon the ballots in any of the counties of the state, their insertion is harmless.

As the statute does not require a square to be placed at the end of the space below the words "County Committeeman," it would seem to be intended to allow the elector to vote for his choice for that position by merely writing in the name. But we see no particular danger or objection in the square after this space which appears upon the sample ballots before us, because if the elector in addition to writing in the name for county committeeman should also insert a cross in the square, as he is directed to do in voting for candidates whose names are printed on the ballot, it would not be deemed detrimental as a distinguishing mark when considered in connection with the permissible writing of the name and the other squares upon the ballot if the provisions of our Australian ballot law be considered applicable to primary elections, except as otherwise provided in the late act.

As the sample ballots which have been attacked in this proceeding bear the words "County Committeeman" preceding a blank space followed by a square, and omit any designation of the office for which no petitions have been filed, but include under each group of printed names of candidates as many blank spaces as there are to be candidates nominated for the particular office, official ballots in the same form may be used if already printed, but, if

not already printed, it is suggested that these extra spaces may be omitted.

The order regarding the printing of the ballots will be modified to correspond with these views.